and Murray Nolan v. Scott Rubin et al. Richard Cohen are you going to be addressing first? I think I'd like to address Falcone first. Okay. I'll try to split them up as evenly as possible. If that's what the court wants, I wasn't quite sure how the format would play out for the court. Well, we're happy to hear your arguments. I would ask that as we proceed through the second round to the extent you have new arguments, feel free to make them. We don't need to hear a repeat of arguments that you make over this time to us. Okay. Am I going straight through for both cases, though? Is that the format? I think we'll hear from you and then from your colleagues on the other side of the aisle. Okay. Thank you. May it please the court, my name is Ronald Berruti of the firm Murray Nolan Berruti on behalf of the plaintiff George Falcone. The Falcone, I'll reserve time, I think, five minutes for rebuttal on this case. The Falcone case is a classic Nieves case. In this matter, 15 people came to a meeting unmasked and one person was vocal. One person tried to serve or did serve papers that he believed were legal pleadings on the board. One person spoke with police officers. One person pointed out that one police officer was not wearing a mask. And 15 other people were silently unmasked. And at the end, the one person was told, said to the police that he would put on a mask if he was going to be arrested. He was told that he would not be arrested. And the other 15 people just sat silently unmasked. And the one person who did all those things was exercising First Amendment rights. And he's the only one who received the summons. Now, under the Nieves standard, this is a classic no probable cause case. And, therefore, the question becomes whether or not, under the circumstances presented, the activities of Mr. Falcone were a substantial motivating factor for the summons. And, of course, they were. Because there was an executive order in place. So in not being masked at that time, he was violating the law, right? Yes. But as Nieves says, Nieves discusses how it's important that people be able to exercise their First Amendment rights without the threat of arrest. Here he was exercising his First Amendment rights, and only he was exercising his First Amendment rights. Fifteen other people were also unmasked. None of them received the summons. So he was treated differently than everybody else. That's not to say there's no probable cause. Are they First Amendment rights if this is a remedial order put in by the school district for the protection of people at school during a recognized medical emergency? What right does he have to express his opposition to that by breaking the law? Well, first of all, again, executive order is not a law. It's an executive order. It's an administrative action. Second of all, in Mr. Falcone's case, this was not a building where schoolchildren were learning anything. This was not a building used for school. So we argue that it was not subject to the executive order at all. It was part of the school system. It was a school board meeting. I am not convinced by your argument. I didn't hear the – whoops, I'm sorry. This was a school board meeting, an official function of the school. I am not impressed by your argument to the contrary. Well, fair enough. If it was – even if it was something that was – if there was an obligation, let's say, to wear a mask, there were 15 people there who did not wear masks, and only one person was punished. And the only person who was punished was the one who spoke up. Clearly, there's a distinguishing factor between Mr. Falcone and the others. And Nieves specifically talks about there being a distinguishing factor between the people who are similarly situated. So in Mr. Falcone's situation, that's absolutely what happened. And therefore, this was a retaliatory summons that was sent – that was charged to him because everyone else should have gotten summonses too if it wasn't. Well, Nieves offers up a couple of exceptions for retaliatory arrest even when there is probable cause. Are you conceding that there's probable cause in arguing for an exception, or are you saying that there wasn't probable cause to believe that he was violating the law? I think that Nieves uses the example of a jaywalker. And I guess it is probable cause as Nieves looks at it. Jaywalkers typically are not arrested for jaywalking. But if a jaywalker simultaneously is exercising First Amendment rights, and the jaywalker in this particular case is arrested, well, there's probable cause that he was jaywalking. But the court looked at that and says, that's not really – that really is what is retaliatory. And it takes it out of the probable cause situation and puts it into a lasman situation, more of a lasman type of situation where the court then has to ask whether or not the First Amendment activity was a substantial motivating factor of the arrest, or in this case of the summons. But to fit this exception, you have to persuade us that he is similarly situated to the other people who were not arrested. Yes. But he's the – identifies the leader and organizer. Yes. Not wearing a mask. So doesn't that make him not similarly situated to the others who were present? No, not at all. They all came for the same reason. They all came unmasked to the same meeting. Had someone else spoken up, that person probably would have been the one who got at the summons. Mr. Falcone, being a leader is not a criteria as to whether or not there is a difference in treatment. They all were unmasked purportedly because an executive order existed. They couldn't be unmasked. Isn't that a distinguishing feature that makes him not – certainly not identically situated to the others who were present and unmasked? I disagree with that premise. The fact that he's vocal is his First Amendment activity. The First Amendment activity is the motivating factor for the arrest. Yes, he was different in that he spoke up. He engaged in First Amendment activity and he was punished for it. And that's precisely what Nieves prevents, precludes. How is it First Amendment activity when what he is protesting against is a school regulation that is in effect that he protests by violating it, and yet it is not an underlying constitutional right that he was being deprived of because the school had every right to institute this program for the health of the school system? The allegations are that Mr. Falcone was protesting not the executive order. He was protesting the school's – the school board's behavior in failing to take – give any kind of – the failure of the school system to help students who had needs with masks. So this wasn't an EEO. You kind of lost me. What is the constitutionally protected conduct that you're asking – you're telling us exists here? He had the right to come in unmasked in symbolic speech to protest the masking policies that were in place. Now, that almost sounds – are you saying you have a right not to wear a seatbelt or a motorcycle helmet in those states that require motorcycle helmets? No, very different. In this case, this was a time of great national crisis, we'll say. There was a great national debate about masking. There was a lot of indications that people who were – children who were masked were not receiving the proper education, that they were getting sick from them, and people had a right to complain. You know, it's interesting. And I believe that this is going to be the kind of case where we're going to look back on it in the years from now and we're going to say, how did we not see that all of these regulations and rules were troublesome to the constitution? How is it that it took so long for us to recognize that people who came and argued that masking children was dangerous and then were punished for it did not have their First Amendment rights violated? Here – I think we're going to look at this many years in the future and think, what a silly thing to be sitting and arguing about, frankly. Respectfully, I believe that – and we haven't had a chance to develop the record because we were dismissed on a motion to dismiss. I believe that if we were able to develop the record, we'd be able to demonstrate quite – with a lot of evidence that the masking has actually been very harmful to children. But no one's precluding your client from making those arguments verbally in any number of different channels. The issue here is the act of removing a mask in an inside, crowded location where there is an executive order that precludes doing just that. There were 15 people who were unmasked and only one person punished. That's Niedes. The one person punished was the one exercising First Amendment. If all 15 people, including the police officer who was unmasked and told Mr. Falcone to put on a mask – Mr. Falcone, you have to put on a mask. Sir, you're not masked yourself. And he said, if you're going to arrest me, I'll put on a mask. He said, no, you're not going to be arrested. In other words, you're not going to be punished. If everyone who was unmasked was treated the same and everyone unmasked received a summons, then there's no problem. But in this case, the only person to receive a summons was the person who spoke up. And the speaking up part, the objecting vocally to the policy is what caused him to get the summons. And because he was vocal, he was exercising First Amendment rights differently than other people. As Judge Ambrose was saying, he was not similar to the others. He's the one who spoke up. He should not be treated in the same way as those who acted differently in the situation. And because he was different, I fail to see you're insisting upon the similarity between him and the other people who didn't speak up, who didn't carry signs, et cetera, et cetera. I think, me, you're building on a false basis that should crumble from the bottom. I respectfully disagree. I believe that if Your Honor reads Navis and reads the jaywalking example, Your Honor will see that it's exactly what the Supreme Court was talking about. If there were 15 jaywalkers, and it's not typical to give a summons to a jaywalker, and one of those jaywalkers is exercising a First Amendment right and is summoned, the Supreme Court in Yates says that person who was acting differently, exercising the First Amendment right, and was summoned has been the subject of a retaliatory, in this case, summons or arrest. Navis was not exercising a First Amendment right. He was speaking. He was speaking up where others didn't. He could have spoken up. He chose not to. He was wearing a mask in a situation where, for public health, masks were required. He was refusing to wear a mask. There were 15 people without masks. That's the facts. There were 15 people in that room, including a police officer, without masks. Let's say we assume that we see there is some distinction based on being a leader and organizer in that situation. So let's go to the question of whether this is expressive conduct or not. And where we've got someone who is not wearing a mask, and it's, as the district court found, at least in Mr. Murray Nolan's case, that that's susceptible to a number of different interpretations. It requires some explanatory language to understand that it has the First Amendment meaning that you attribute to it. How could it qualify as expressive conduct? Well, as this court said in Tenafly ERV v. Borough of Tenafly, 309 F. 3rd 144 at 158, conduct is protected by the First Amendment. I'm slightly familiar with that. I like to quote great sources. Conduct is protected by the First Amendment when the nature of the activity, combined with the factual context and environment in which it was undertaken, shows that the activity was sufficiently imbued with elements of communication to fall within the First Amendment's scope. Mr. Falcone was serving papers related to masking. He was saying that the board was engaged in conduct that was harming children and that he was seeking to have action against the bond. He believed that this was a proper legal papers. He's not an attorney. But the whole conduct was about masking. He's not wearing a mask as a symbol of unity, as were 15 other people, of a symbol of unity not wearing masks with the children and in support of their argument. So their conduct in the environment of not wearing a mask was symbolic speech in and of itself. And then there's other expressive activity that occurred, which was the serving of the papers for Mr. Falcone and also the speech that he was making about the problems of masking. Just so I understand, you have an executive order that's put into place by the governor for health reasons, in order to protect others from injury, from those who have COVID or are in an incubation period for COVID. And you're saying that somebody opposes that, is opposing it, and possibly putting others at risk is nonetheless constitutionally protected conduct. If I burn a flag, I potentially put other people at risk. I could burn somebody. Burning a flag, burning the symbol of the country is said by the Supreme Court to be speech. But that doesn't harm physically an individual. So that's the reason I mentioned to you about the seatbelts or the helmets for people on motorcycles in the states that require them. There is a reason here for this executive order. And I think what you're telling me is that it's First Amendment constitutionally protected. That it comes above the health and safety of people in the community. Is that correct? Yeah. I mean, it says if the state could use these laws, not for their intended purposes, but to silence those who voice unpopular ideas, little would be left of our First Amendment liberties. And little would separate us from the tyrannies of the past or the malignant fiefdoms of our current age. The freedom to speak without risking arrest is one of the principal characteristics by which we distinguish a free nation. If there are 15 motor vehicles... The plaintiff was not prevented from voicing his belief. He passed out so-called legal documents to everyone there. He was broadcasting loud and clear verbally his belief. So what is the wearing of the mask which is violating a valid regulation? How does that prevent him from having free speech when he's already exercising it all over the place? Your Honor is making my point exactly. The point is he made First Amendment. He did speak. There were 15 other people at that same meeting who did not wear a mask. The only person punished was the person who spoke. It's the speech that is an issue, not the wearing of a mask. That's a red herring. The speech was punished here. And maybe it were, as we say, confusing the two cases. I thought your argument for Mr. Falcone is that he has standing, right? No, I'm arguing that Mr. Falcone... Well, certainly Mr. Falcone has standing. And then it's a different argument that you would make in connection with Ms. Marie Nolan, correct? Yes, I'm making different arguments with respect to Ms. Marie Nolan. But it's beyond standing because the entire... This Court is reviewing DeNova. Let's deal with the gateway issue, standing. And you, in my view, probably have some pretty darn good arguments that he does have standing. But what are those arguments with respect to just standing? Mr. Falcone has an injury in fact. He was issued a summons that could put him in jail potentially for 30 days. That summons is fairly traceable to his activity, his speech activity. Everyone else who was there unmasked was not given a summons. Only Mr. Falcone who spoke was given a summons. And it's redressable. It's redressable by the lawsuit. Mr. Falcone has a damages claim. And so those are the standing requirements. So he meets all three standards and has met the standing threshold. And that's why I'm arguing really the issue of Title VII and how...and Yavis. Now, this is a class... If he has standing, then don't we just remand for him? I think, yes, you can remand. Do we have any basis for addressing 12B6 if we are reversing as to standing? If you're reversing as to standing, I don't think that you have an obligation to... I believe that... Yeah, I think that's correct. I'm looking at this argument as a de novo argument, so I'm giving you the full argument. But if Your Honors believe that standing is the only issue, that was the subject of the dismissal. And if Your Honors believe that Mr. Falcone has standing... I don't know if that issue has come up in Ms. Murray-Nolan's case clearly, but it seems like the court here based its decision on standing as to Mr. Falcone. Yeah, the court in this case looked at... compared it to an unpublished Colorado District Court opinion, which I think had no applicability and said that there was no standing because he had to sue the governor and that this was really an inapplicable case. Okay. Okay? Anything further? You're going to come back on this? I'll come back. Thank you. She's in charge here, I'm not. We'll hear from Mr. Falcone. I'm sorry, we'll hear Mr. Harrison? Yes. Okay. Eric Harrison of Mefeso and Warble. I will confine my comments to the Falcone case. I represent Officer Miroslav Alfeldi and the Freehold Police Department. I'll address the questions raised in reverse order. In response to Judge Ambrose asking if there was standing, shouldn't we just remand the case? I would respectfully submit the answer to that question is no. Appeals are from judgments and not from reasons. And I happen to feel- The judgment was a dismissal, right? It was. So if it should not be dismissed, if there is standing, then you get to the merits, do you not? Or some other issue that possibly is gateway. Yes, those are issues that were fully briefed, and although they were not adjudicated below, they are properly joined issue on, and they are before this court. So my suggestion to this court would be, if in fact it does find standing, and candidly, Judge Sheridan went further than we expected him to do on the standing issue. I'm not going to stand here and say there was not an injury in fact. The point we were making below as to standing was, to the extent that plaintiff is seeking to attack a masking mandate that came from above, his complaint would be with the above entity, i.e., Governor Murphy, and this court has seen its own challenges to that. But I think that the maxim that appeals are from judgments and not reasons empowers this court not to send it back simply because Judge Sheridan did not rule in the alternative on the 12B6 issue, but in fact to look at the 12B6 issues which have been fully briefed. On those 12B6 issues, we just went in a circle talking about expressive conduct. What prevented Mr. Falcone from walking up to that podium in a mask and say, what are you people doing? This is contrary to my First Amendment rights. We're not seeing anything in the record to suggest that he could not speak out while abiding by the law at that time. What interests Mr. Burruti is D'Avett's argument that others were also unmasked, and if it's for speaking there or in the broader context of having expressed his opposition to the mask requirement, that that's what was leading to him being targeted for arrest. My response to that is that it's a bit of a circular argument, but I'll address it as is, and then I'll get to why I think it's circular. These individuals were not similarly situated to the plaintiff, and I always revert to Iqbal Swambley when I'm looking at 12B6. The one document I have in front of me, the two documents I have right now, are the amended complaints in the two of these cases, and at paragraph 28 of the amended complaint, it says prior to the meeting, defendant Amoroso approached the plaintiff and about 15 others who came to the meeting in support of the plaintiff, none of whom were wearing masks and advised that they had to put masks on or the meeting would not commence. There's nothing in this complaint that says any of them approached the podium or was, again, approached by an officer and told you've got to put on a mask. They are simply not similarly situated. But before you get there, we get to the question of, is refusing to wear a mask inherently expressive activity? Now, my adversary is a very smart lawyer, and I expected him to shift to the other things that happened at the meeting in support of his argument that this was protected First Amendment activity, but there's nothing alleged that links what he's talking about separately, whether it be his online activity before this meeting or what happened at the meeting itself to the issuance of the summons. All that we see here is a gentleman who's saying, I had a constitutional right to express my views on my constitutional rights by violating a law, which itself did not hamper his constitutional rights, because there's nothing in the pleading to suggest that he could not speak while wearing the mask, abide by the law while speaking out against it. But expressive conduct, we know from Texas C. Johnson, we can take account of context. Yes. So part of the question really is, how narrowly or broadly do we look at that context? And where you have someone who has been outspoken about these issues and then is not wearing a mask. Why isn't, given that context, why isn't that inherently expressive? Because we are a nation of laws and there are different reasons why a person may not have a mask on at a given moment. There could be a medical exemption. We even have a description of a police officer not wearing a mask. For all we know, he had, yeah, by then there were vaccinations. For all we know, he had satisfied his departmental requirements of demonstrating vaccination status. It is substantively different not to put on a mask than to burn a flag. And that therein lies the important difference. It is not inherently expressive activity. But even if it were, this brings us to Menel, which has also been briefed. In order for liability to attach to a municipality or a board of education for a constitutional violation, there must be a policy, practice, or custom which itself is violative of the Constitution and which leads to the injury, in fact, in the case. Similarly, as to all these individual defendants who have been sued, we have qualified immunity. In order for qualified immunity not to apply, there needs to be a violation of a clearly established constitutional right. The mere fact that we are here shows that there is not a clearly established constitutional right to refuse to wear a mask in the face of a health-based mask mandate that came from the governor of the state. Was he really bringing a First Amendment retaliation and due process deprivation claim against the defendants? Yes. Under the New Jersey Civil Rights Act, he made a due process deprivation claim against the defendants. And then also a retaliation claim that, in effect, they were picking on him. And the question then becomes, if he's claiming he was injured by receiving a summons, isn't that injury not traceable to the police defendants? It is indeed, and that's why I'm saying Judge Sheridan went a little too far with his standing analysis. I'm arguing 12b-6, that he has failed to satisfy the elements of any of the claims asserted. I don't think it was due process. I think he alleged equal protection violation, claiming that he's within a class of one. And I think all of those issues have been joined as to the causes of action attempted to be asserted. And they weren't all in the opinions we're looking at. Certainly, as Mr. Falcone, I agree, but for this rule that appeals are from judgments and not the reasons for judgments, frankly, we might be saying, go ahead and send it back to Judge Sheridan, because certainly he had an injury, in fact. But the issues have all been fully briefed. The due process rights of the parties involved in the case have all been fully met. There are no surprises here to anybody. But usually, if the court hasn't dealt with it and it goes back on a procedural issue, we normally give the courtesy of the first shot at this to the district court. First shot at the merits. I concede that this court has the discretion to do that. I'd suggest that because of how fully this has been briefed and the fact that it's consolidated with the Murray-Nolan cases, in which the fundamental issues really overlap, that judicial economy would best be served by this court ruling on it. Well, you have two different judges anyway. That is true. You can affirm on any ground. You can affirm on any ground. That is my point. Can we go back to context for a moment? If you see someone burning a flag, how do you know, for example, that it's not a dilapidated flag and they're going through the proper protocols for dispensing with a dilapidated flag? You need to look at the context and what that communicates. Why is that any different here? And where we have the context of a particular person who is known to be outspoken, in that circumstance the refusal to wear a mask takes on meaning that it might not otherwise have. Wow, there's so many different ways I could come at that question. I'll start with this. The U.S. Supreme Court has declared that burning a flag is inherently constitutionally protected. But putting that aside, in the midst of a direct ‑‑ let us put ourselves at a position, before the U.S. Supreme Court made that ruling, and I'm driving by and I see somebody burning a flag, the question that the court is asking me is, how is that any different from this scenario? Well, the flag is inherently symbolic. A mask meant to stop germs from coming in and out, which is the subject of a governmental order, is not inherently symbolic. It's inherently a safety device, which people can have passionate disputes about. And I think Judge Patton really hit the nail on the head when she was talking about how it's not symbolic speech, because in her case, and I won't bleed too much into that, but in her case, the plaintiff told everybody what she's doing. I am not wearing a mask because I'm protesting the mask mandate, and that's protected. Okay, there could have been people in there with medical exemptions. I won't get far afield into that case. But I concede, Your Honor, as the Supreme Court has ruled, that there is some degree of expressiveness in everything we do. I feel that while you're inviting me to say it's a slippery slope, I'd say sometimes that slope can get slippery, but the top of that slope with the burning of an inherently symbolic piece of flag versus the end of refusing to wear a mask because you want to protest being told you have to wear a mask, it's not inherently symbolic. We know what was going on. We know from additional speech that predated it that it was meant to be symbolic from Mr. Falcone's point of view, but that does not make the act itself symbolic. So when you're saying pay attention to context, yes, but the context that Your Honor is drawing on is additional speech by the plaintiff explaining his actions, whereas the flag by the roadside, it is fair to assume that that's what's going on. It's an inherently symbolic speech. I'm very cognizant of it, Baltimore, when it comes to all of these claims, and if there had been evidence of – if there had been facts alleged to support a claim that this was a consequence of protected speech that may have preceded that meeting, and I don't even think plaintiffs are arguing in favor of that, then there could be something there. For example, both of these complaints allege that at least upon information and belief, the defendants or at least some of them knew about prior online campaigns of these plaintiffs, but there are no facts alleged in the complaints to say that there was malice aforethought and a plan let's get him if he comes to the meeting because what he or she has been doing previously. And speaking of context, we have two meetings involved in these cases on February 8th and February 14th. On February 7th, Governor Murphy announced as of March 7th, no more mask mandate. So if you're going to look at some of the context, I think you need to look at the entire context to know that while it is true, people engaging in First Amendment activity have a right to – I don't – I want to use a non-pejorative version of the word grandstand, but they have a right to make a point. That's what our country is founded on. That's how you get attention to worthy causes, et cetera. But in the time that they're doing it, it's not protected because it's not inherently symbolic speech. And the fact that they've engaged in conduct online or outside of it, which doesn't form the gravamen of the claims here, does not speak to the – to whether they stated a claim on which release can be granted. I thought that was part of what we were hearing from your adversary, that the reason that Mr. Falcone is being singled out is that background, that it's the one thing that makes him different than others who were not masked is that he spoke out. At that meeting, he stepped to the podium and he was told to put on a mask, and he refused to put on a mask. None of the other 15 stepped to a podium or was told, after the meeting started, you need to put on a mask. Even an indulgent reading of the amended complaint does not say that the 15 folks who were, quote-unquote, silently unmasked were approached by an officer and told, put your mask on. But to the extent that there are allegations, including that some of the defendants were aware of his prior activities, isn't the whole point of that to indicate that it's that surrounding speech that's leading to him being singled out for arrest? Well, as I stand here on behalf of the Freehold Police Department and this particular officer, if we were in state superior court, I'd say I lose on that issue because New Jersey state courts have a very different standard. Under Iqbal Tuamli, there are no facts asserted from which a claim could be supported that either my clients had knowledge of that prior activity. The allegation made against them, Freehold and the officer, is that they were reacting to what they saw there. As to because this bleeds into the other case and as to the other defendants, we still don't have sufficiently particularized facts to suggest that it was in whole or in part based on any online activity that was going on. It focuses on what happened that evening. And because the plaintiff is not similarly situated to the other folks who may have been quote unquote silently unmasked, they are not apt comparators and Nieves' claim cannot arise out of that. Thank you. Thank you. Good afternoon. My name is Ruby Gaworne-Thompson. This is for McCleary, Giapovi, Alzieri, and Jacobs. And we are attorneys for Michelle Lambert, Michael S. Amoroso, Jennifer Patton, Deborah Costanza, Elena O'Sullivan, Mary Cosolino, Meg Toman, Neal Gargiulo, Terry Vettin-Natoli, and the Freehold Township Board of Education, which was improperly pled as Freehold Board of Education. These are all members of the board. Is that correct? Yes. The Freehold Board defendants, if I may call them that, collectively, adopt the arguments that have been made by my colleague, Mr. Harrison, with respect to standing, as well as with respect to whether or not there was expressive activity. Furthermore, the board defendants… On standing, there was a summons, right? There was a summons issued yesterday. And why would that not qualify as a, quote, injury, in fact, close quote, for purposes of standing? Well, I would say that it's not an injury, in fact, for the very simple reason that that claim can't be made against the board defendants because the board defendants had no involvement with the issuance of the summons. Their only involvement, alleged in the complaint, is as to summon police to the premises. That activity is a lawful activity and was in compliance with their policy and their enforcement efforts for the policy. The summons itself, also very important, was not issued because Mr. Falcone was not wearing a mask. It was issued because he disobeyed a lawful order by a police officer. That is what distinguishes Mr. Falcone from anyone else who appeared at the board meeting. Also, Mr. Falcone sets forth no facts in his amended complaint to suggest that those other persons were there for the same reasons as he was or had excuses for not wearing a mask because there were exceptions in both the governor's executive order as well as the board's policy. What you're saying kind of takes me back to younger days of watching the civil rights movement in the early 60s. The police officers would say, well, there was nothing. They were just disobeying an order to disperse, therefore they don't have standing. Of course they did. Well, it's more towards the reason that there's no injury in fact that's fairly traceable to the board defendants. And I think that's what our position is. We don't represent the police department. And so what we're saying is that there are no facts in the complaint to suggest that there's any involvement by any one of the individual board defendants such as the superintendent of the school or the board itself in the actual issuance of the complaint. My understanding is that what they wanted was Mr. Falcone either to comply by wearing a mask or not be at the meeting and if it was permissible to do so, to appear virtually. That was a lawful order, Your Honor. If that was the case and the enforcement activity was a lawful enforcement activity for the reasons that one individual's right or constitutional right to speak does not trump other people's right to safety. And where it is a lawful order, that we cannot have standing because he doesn't have an injury in fact is what we're saying. So for different reasons than Judge Sheridan found, similar concept. But also with Onatella v. Sixth Motion, there are just no facts suggesting involvement. As far as selective enforcement, I do want to add that. Didn't Mr. Falcone also request monetary damages? He did. And if he requests monetary damages even if they're nominal, doesn't that qualify as injury in fact or trying to get regress as an element of standing? Yes, he would have to show that his right to free speech was affected and had more than an incidental burden on it. That's what he would have to prove in order to get nominal damages under the First Amendment and Section 1983 in this case. And that he cannot prove because he cannot prove that there was more of an incidental burden on his speech by wearing a mask. He was not prevented from speaking. He had ample channels of alternative communications. He could have gone to the next board meeting and expressed his protest and his objection to masking and health and safety of children. What about the cancellation of the meeting? Doesn't that preclude an opportunity to exercise your First Amendment rights? Yes. So, no, it does not because the board had another scheduled meeting on March 8, 2022, at which Mr. Falcone could have spoken at. He also could have remained outside, spoken to the board members as they entered. He could have carried signs. He could have done any number of things when the board meeting was canceled. Mr. Falcone did not have a constitutional right to appear and speak at a limited public purpose forum as such that a board meeting constitutes. He merely had an expectation, And that's where his claim for a 14th Amendment substantive due process right fails. He needs to allege something more egregious than just the cancellation of the meeting. In addition, I mean, you're really taking issue with whether it's protected speech or not. I mean, if it was known that someone was going to appear at a meeting for the purpose of protesting some zoning proposal and the meeting is canceled to avoid them having the opportunity to do that, you'd agree in those circumstances that that appears to be retaliatory as to First Amendment speech, right? No, because it's not targeting Mr. Falcone because his right to free speech is indistinguishable from everyone else who expected to speak at that meeting. It was affected equally as everyone else. But isn't Mr. Berruti's complaint that Mr. Falcone was in effect singled out, targeted, whatever word you wish to use, in connection with his activities and not with respect to the others? In terms of the cancellation of the meeting? Well, in connection with the appearance of the first meeting and also the second meeting, they knew that he was going to be there. We don't know what was going to happen with respect to the others if even they were to show up. Sure. But again, Mr. Falcone does not have a constitutionally protected right. What the cancellation of the meeting is is no more than a reasonable time, place, manner restriction on speech. He only had an expectation to speak at that meeting. So if that meeting was canceled for the purpose, as alleged, to prevent him from speaking at that meeting without a mask, then that doesn't show that he had a right to speak there. There's no constitutional right to speak at a meeting that is canceled. If it doesn't occur, all persons who were there to talk about any type of issue could allege any time a meeting is canceled that their rights were violated because they weren't able to speak with the board at that moment in time. An action by the government that has collateral consequences for other people doesn't become non-retaliatory where the reason for the deprivation of opportunity to speak is to prevent an individual person from speaking. If that purpose, as alleged, was in fact the purpose, and again, let's put aside whether it's protected speech or not, assume that this is a zoning protest, then a meeting canceled for the purpose of preventing that person from making that protest, surely you'd agree would be retaliatory in violation of the First Amendment. I would not because it only has an incidental effect on that speech at that moment in time. Because that person had an opportunity to speak at the next meeting. By law, the Board of Education must have two meetings a month. Therefore, there would always be an opportunity. And by law, in the state of New Jersey, there must be a public portion under the Open Public Meetings Act. So the cancellation of the meeting would not be violative of the First Amendment because it needs to have more than an incidental effect on a person's speech. So if they have an opportunity to speak at some later time, that takes care of the termination or cancellation of an opportunity for them to speak without it implicating the First Amendment. That's correct. And I think that falls under time, manner, place, restrictions that are constitutionally permissible in a limited public purpose forum. This is not a public building open to the public or a park or Independence Hall or, you know, I just saw a protest outside here. But that's not what this is. This is a school-owned premises building where the meeting is convened for these board members to discuss matters of governance of their school. And there is a public portion section which any member of the public can speak on any topic. That is never, Mr. Falconer has never been deprived of that at any meeting that has been held. I see my time is up. Thank you very much. Thank you. Thank you, Your Honors. The loss of First Amendment freedoms for even minimal periods of time unquestionably constitutes irreparable injury. Roman Catholic Diocese v. Cuomo, 141 Supreme Court, 63 and 67, 2020. The idea that this was an incidental denial, deprivation of the First Amendment, that doesn't fly under the Roman Catholic Diocese. He was irreparably harmed by being silenced. Texas v. Johnson. Flag burning is not inherently speech. In fact, in Texas v. Johnson, the Supreme Court was very careful and said, under the circumstances, Johnson's burning of the flag constituted expressive conduct, permitting him to invoke the First Amendment. The state conceded that the conduct was expressive. Occurring as it did at the end of a demonstration coinciding with the Republican National Convention, the expressive, overtly political nature of the conduct was both intentional and overwhelmingly apparent. This was an intentional and overwhelmingly apparent reason for not wearing a mask. Mr. Falcone, as has been alleged in the complaint, was known by the board because he had in the past spoken out about masking at board meetings. And that's that. Mr. Brewer, let me ask you about some ground that we haven't covered, and that is the breadth of the injunctive relief that's been requested. It sure looks like an obey-the-law injunction that you're asking for. How is this sufficiently specific to past muster? I'm prepared to concede the injunctive relief, but we still have economic relief that we're seeking. So under that circumstance, I will agree with you. It is a bit overbroad. I appreciate Mr. Harrison conceding standing. There is standing here, certainly. And we also allege that the school board conspired with the police to cause this to happen, and that's at paragraph 42 and 829 of the appendix. The particular purpose here for not wearing a mask was very apparent. It was an ongoing protest against masking policies. In fact, the complaint asserts that Mr. Falcone's position was that because the masking was harming children, that the school board, his protest was the school board was obligated to ignore the executive order, right, wrong, or indifferent. That was his First Amendment right to say that and his symbolic speech to do that. I think we've heard your arguments as to Mr. Falcone. Are there additional separate arguments you want to make as to Mr. Nolan? Yes, if I can get my – I don't know if I'm using the same time, but I'll grab my papers here. If they were protesting the masks, shouldn't they have done that to the governor, not to the school board, to the health regulations? The First Amendment does not require individuals to protest in a manner that other people see fit, and that's part of the argument that's being made by the defendants. He should have done it this way. He should have done it that way. No, he did it his way. It was his expressive conduct. It's his personal right that is protected by the First Amendment. If he wanted to carry signs, he could have done that. Maybe he did. I don't know. But in this particular forum, he felt it was important to express himself and to have a symbolic speech, as did others. I just want to also note with respect to Mr. Falcone, again, the police officer who told him to put a mask on was himself unmasked, as Mr. Falcone pointed out, and I think that was an important point. Moving on to – I believe that my – I have a clock for six minutes on a rebuttal, I guess, but I've reserved – I think we're doing 15 and 15 on Murray Nolan. But Murray Nolan's case is different, and standing is not an issue. The district court did find her to be standing. Here's a case where for eight months it was well known. The only retaliatory conduct that she alleges was her arrest. Is that correct? Excuse me, Your Honor? Is the only retaliatory conduct that she alleges is her arrest? There's an arrest, and also they canceled the meeting on January 24th right at the point of public speaking, at the point where she would be able to speak. The meeting had gone on with her unmasked for the first half of the meeting. She was front row. They knew she was unmasked. That's what the allegation is. And just when it was time to have the public come up to speak, they tried to force her to wear a mask. And then when she – and then others also removed their masks in solidarity with her. And when that happened, they just canceled the meeting to prevent the public from being heard. If it's a retaliatory arrest, does Ms. Murray Nolan have a claim against the board or the attorneys for the board? Yes, two separate – there's two separate – so going to the February 14th meeting, the board and the attorneys and the superintendent all met just prior to the meeting. In fact, Ms. Murray Nolan was not arrested at the meeting. She was arrested before the meeting. And they came out of the meeting, we found out, because of – we've received and it's alleged we've received their body cams, that the superintendent and the attorneys came out and advised that she was – had filed a lawsuit claiming that she was at a First Amendment protest that had been ongoing for eight months that they well knew about because she spoke every meeting without a mask at the meeting. And so they were – the interest here was to retaliate against her. Now, the board attorneys are an interesting case here because what business does the board attorney have to do with, first of all, speaking to the police and suggesting that she be arrested or telling them to arrest her? That's not the board attorney's function. But the board attorney took it upon himself, masked in some kind of belief or understanding, that he had the power of the state behind him. Is that a play on words? Yes, yes, exactly. It was an unintentional pun, but I wish I was that quick to think about it. And then he sat down and he basically threatened Ms. Marie Nolan to put on a mask and she said, I'm engaged in a First Amendment protest. Here's the complaint. You know what the protest is. He threw the papers away, said put on the mask. And again, what is his business to do this? He's an attorney for the board. That's not what his function is. And he took it upon himself to become the enforcer for the board. And he was also one, by the way, who had a conflict of interest at that point. He can't be representative of the board at that point. That's really not a position that's necessary to talk about here. But he was definitely conflicted at the time as well, which is a real problem for him. So his actions were cloaked in states, under the power of the state, and he was a state actor, as was his firm through him at that point. Likewise, at the prior meeting, his partner, Ms. Osborne, took it upon herself to interrupt the meeting, to tell people who had been unmasked, or tell Ms. Marie Nolan, who was unmasked the whole meeting, to put on a mask when it was time for her turn to speak. And again, she had no business being the enforcer, but she took it upon herself, cloaked in this idea of state authority that she apparently had, that she could do that. And so they were state actors under the circumstances based upon the law that we've briefed. In terms of the board, yes, the board absolutely had been hearing, as had the superintendent, had been hearing for months Ms. Marie Nolan protesting. Ms. Marie Nolan has a special needs child. She had a child who had a medical condition as a result of wearing a mask, who had a mask exemption that was ignored. Ms. Marie Nolan's protest was singularly, there's nowhere in the complaint anything about an EO. There was never a protest about the EO. The face of the complaint, which this court is supposed to look at, this was a protest about this particular school board's failure to act to protect special needs children and to protect children with medical issues who were having, being compelled to wear masks in school. She testified before the assembly. She testified before state senate. She went to every single person up the chain of command in the school system to try to get some relief, and nothing happened. Is that just to say it was a protest to the enforcement of the executive order? This was not a protest of the executive order. It's nowhere in our complaint was this ever a protest of the executive order. The protest was singularly with respect, and in the complaint, was with respect to the board and superintendents in action in helping kids with special needs, helping them get the relief they need. That's just the flip side of the enforcement of the order, right? I didn't hear you. I'm sorry. That's just the flip side of the enforcement of the order. I would disagree. I think that the school board is its own legal entity. The school board had the ability to have exemptions through the executive orders. They were able to make decisions. In this case, there was actually a medical note for one of the children, and the school still made him to remain masked, and this is her child. And she was upset, and she spoke to the teacher, and she spoke to the principal, and she spoke to the school nurse, and that didn't work. And so she went to the school board, and that didn't work, and the superintendent. Then, as reflected in the complaint, they retaliated against her through her children, that her children were wearing masks, and they were retaliated against. Can you speak to the arguments as to the Sunshine Law? Is that a freestanding argument? What remedy could the federal courts provide? I think that goes to the arguments with respect to the New Jersey Civil Rights Act violation, that there was a right to have an open public meeting that she was deprived of, and to speak at that meeting. That's really the NYCRA argument. Okay. Now, I have a red light. I'm not sure what the time is. Well, I think you've used your basic time. We'll have you back on rebuttal as to these matters, and let's hear from your adversaries as to Ms. Marie Nolan. Thank you. Eric Harrison once again. In this case, representing the Board of Education, its members, and its superintendent of schools. The New Jersey Sunshine Law is what it sounds like. Action taken by public bodies must be taken in the sunshine. It must be done publicly. Conferring for a discussion in executive session as to what are we going to do. We've got this policy. We've got this mandate, and these people are refusing. This person is refusing to wear a mask. That is not a violation of the Sunshine Law. If you believed it were, you would destroy attorney-client privilege. And I want to speak practically because the issues have all been well briefed. I'm a board attorney for a handful of boards of education in New Jersey. In this case, I'm simply representing them in the context of litigation. I personally attended meetings during the mask mandate. I personally presided over a superintendent of schools coming up to me and saying, hey, there are three people back there who are refusing to wear masks. What do we do? I asked this court when adjudicating this case, think about that. What are we to do when the governor has told us this is what you must do, and we are faced with a situation on the ground? In one of these cases, we have a young, younger, less experienced officer who knows what he was thinking at the time. We have an attendee saying, I'm engaging in my First Amendment rights. Promise me I'm not going to get arrested. He says, don't worry, you're not going to get arrested. He doesn't want to bring litigation upon his township, presumably. So the gentleman speaks. Unfettered free speech is had at that meeting, and he subsequently gets a summons for not abiding by the rules of attendance, the rule of law, which nobody is saying was unlawful. What are we to do? In response to my colleague's statement that Mr. Scarillo is an attorney for the board and he had no business doing this, I completely, 120% disagree. Why do I go to Board of Education meetings? Because my clients want help in ensuring that they're complying with the law. I have answered questions weighing the pros and cons. I remember vividly two different meetings I was at before the mask mandate was removed, where I said, well, we've got that other room with the screen. They can be moved there. In this particular case, Ms. Marie Nolan had the option of virtual attendance and participation. And we've got to keep in mind the culture wars that are raging and the people in the room who are going to come after us if we don't abide by the governor's directive in our policy. What do we do with the parallels here to Lozman? In particular, where there's been some apparent agreement ahead of time that's communicated to Ms. Marie Nolan that she's to be arrested if she comes in unmasked. And when she comes in to have one of the attorneys signaling to the police to come over and to effectuate that arrest, doesn't that look a lot like the recorded statement in Lozman that's evidence of an official policy? What we have in this case is not a statement to Ms. Marie Nolan. We have a public statement put on, I believe it was the Facebook page of the Board of Education that said, here's this unfortunate thing that happened on January 24th. People refused to mask themselves as required. In the future, you must mask yourself. And that very same statement said, but this is going to end on March 7th. So I don't see it as on parallel with Lozman. I don't see it as a conspiracy. Ms. Marie Nolan may have been a prominent advocate and very outspoken against masking. But there are no facts alleged in the amended complaint suggesting that this was all done because of her individually or that it was unlike what Mr. Falcone is saying with the 15 others. There are no allegations in this complaint that she in particular was singled out from others who were similarly situated. Is it alleged by Defendant McCaffrey that she's told as she's coming into the meeting that the word is she's to be arrested? I don't think that's what alleged. I think McCaffrey is alleged to. She comes in and says, I'm not wearing a mask. And he says, I was told to call the police if someone doesn't wear a mask. I don't think he's alleged to have said you, Ms. Marie Nolan. If I if I'm wrong, because I don't have that particular amended complaint in front of me, I stand corrected. But even if that were the case, because Ms. Marie Nolan had made clear that she was going to do it. She sent an email an hour before the meeting saying, hey, I'm coming in and I filed papers in federal court seeking an injunction. Even if she had been told by McCaffrey, I have instructions to call the police if you refuse to wear a mask. I don't see that as an as an actionable statement. It's preparing for what may occur when you've been given notice that there's going to be a violation of a reasonable time, place and manner restriction. And they need to maintain order at a board meeting. If I, as a board attorney, got the advice, hey, this one person's posting online. Things are going to get hairy tonight. Then you're you're absolutely right that I'm going to communicate with my client in such a manner as to prepare for that particularized threat that has been presented to us. I can't see how that could be on all fours with those men. OK, thank you very much. Thank you. Good afternoon, your honors. Jack Gillick from Reno and Coppola Minchello on behalf of the referred to as the the Cranford Police Defendants. It's both the Cranford Police Department and the three individual officers named. The first issue I would like to speak about briefly, and it may or may not even be moved at this point, is the discussion of Article three standing here. The court found that there was standing in terms of a particularized injury, but it did find that there was not standing when it came to the injunctive relief. And that was due to the fact that, as Judge Pattian expressed, the relief sought was wildly expansive. I think that's been conceded. Well, that's what I've said. You know what? Measure twice, cut once, as somebody once told me a long time ago. So presuming that that's the case, then I will skip on to discuss these particular police issues. And here, as is different from Falcone, the court did find that probable cause had been established. And we believe that it had been. The statute for trespassing, defined trespassing, has really been met on its face under the facts, even as pled. Isn't probable cause usually a question for the jury? Not. Not when it's pled in when the actual establishment of the offense is being pled in the complaint. And, you know, probable cause. Is this Marie Nolan free to argue that there was no probable cause for her arrest? She can certainly argue that at the at the municipal court. I mean, she can argue that now. But that's not she's not saying that she that her conduct didn't meet the statutory definition for trespassing. What she's been arguing is that her stating to an officer the belief that she has a constitutional right to engage in on the unlawful act. Negates their ability to arrest or somehow negates probable cause. And that's not what the law is. As Mr. Harrison noted, obviously, we are a nation of the rules of law. But to use a similar example would be if if somebody is being arrested, let's say, for pulled over and they're being arrested for drugs. And they say to the the officers that are there on the scene and they say, I believe that search was unconstitutional. By this argument, by the plaintiff's argument, those police officers would wipe their hands and step back and say, oh, OK, you're making that argument. So therefore, there's not probable cause for the arrest. And we're going to let you go here that the council calls, calls the officer over to effectuate the arrest that that I mean, The slide there is that there's not really an independent probable cause determination being made that the officers are just following the instructions of of counsel. And how do you distinguish that from Lozman's situation? OK, I distinguish it in several different ways. The first would be the fact that the person from the Board of Education or the attorney wave wave them over, really, as far and having watched the body worn camera footage numerous times. Only it seemed to be just pointing to the location of where the plaintiff was. But more importantly, Sergeant Jones, the arresting officer, is seen on the body worn camera footage and it's not denied by plaintiff, came over to her and spoke to her for several minutes trying to explain to her that she was in violation of the trespassing law and that she either needed to wear a mask and she could stay, not wear a mask and leave, but that she couldn't do both or she would be arrested for trespassing. And this was just told to her several times. So under the probable, under the trespass statute, that is a violation in and of itself. Plaintiff simply stating vaguely that I have a constitutional right not to wear a mask does not, you know, when we talk about Lozman, we also talk about, you know, the context. That was something that was discussed quite a bit earlier. Well, the context here is not pledged to the officers. Whether plaintiff had filed an order to show cause or what have you against the Board of Education is neither here nor there if the arresting officer has no personal knowledge of it. And here there's not even an allegation that she did. In fact, on top of that, plaintiff's counsel just stood up and said that the protest was to protest the inaction of the Board of Education and their failure to protect special needs children. Well, that's not obvious from just plaintiff saying vaguely to the officer, I have a constitutional right not to wear a mask. That's a very distinct difference. Does this officer, I don't think anybody could conceivably say that this officer was able to glean that long winded description of the idea behind the protest being to protect special needs children from the simple fact of non refusal to wear the mask. So from the context alone, her protest was not clear. It was not inherently expressive as was discussed before and I don't want to necessarily get too knee deep into something that's already been discussed. The plaintiff here admits that she had multiple warnings and that the conduct itself was not inherently expressive, we argue. Now, a difference here, well, there are several differences between us and the Falcone case. But here, you know, on our motion to dismiss the issue of qualified immunity was discussed as well. You know, where we have a case of rights and a qualified immunity, we're talking about a clearly established right. Is the officer's conduct violating a clearly established right? We would argue that there's no way that argument could be made. And that's because there's no case law that holds that not wearing a mask is inherently expressive conduct. Nor is there any case law that expressing the belief to an officer that a generalized constitutional violation has occurred would protect you from an otherwise lawful arrest from clearly unlawful conduct. The court here determined there was no violation. We don't need necessarily to get into what's clearly established if we conclude that there was no violation. Well, this is true. Your Honor is correct in that regard. And if there is a violation, is that whether it's clearly established something we should leave for the district court in the first instance? Well, again, a similar argument as was discussed before. While I certainly recognize that Your Honors have the discretion in order to do that, I believe that for purposes of judicial economy and allocation of resources, that it certainly would make sense. Whereas here, it's clear from the complaints and the reviews, DeNovo. I mean, I would be at a loss to understand why that second step would be necessary. Thus, implicating more tax dollars and time defending a case where on the face of it, the violation of law was clear and essentially admitted by the plaintiff. And she only seeks to have that excused because she made a vague violation of the constitutional claim at the time she was being arrested. Which, like I said, maybe is a bad analogy. But to say, well, you're violating my Fourth Amendment right. Or even think if a police officer pulls someone over and there's an outstanding warrant. And the person says, well, I paid that yesterday. It shouldn't be on the books. I'm not sure that's a fair characterization of her argument. She alleges that she is, in fact, exercising her First Amendment rights, including not just with her speech but also as verbal speech, but also through the expressive conduct of not wearing a mask. Whether she told the police officer that and even whether a police officer agreed with her is sort of a secondary point. So I think we understand the argument. Okay. Thank you, Your Honor. Thank you. Okay. May it please the Court, Your Honors. My name is Eileen Monahan-Saccaro from Kaufman-Dolowich, and I represent the attorneys who were sued in the Mary Nolan case, who I will refer to for purpose of this argument as the Schiarrillo appellees. In addition to the reasons already discussed by my co-counsel here today, the district court properly dismissed the amended complaint with regard to the Schiarrillo appellees, because the Schiarrillo appellees were not state actors. The most liberal reading of the amended complaint in this case indicates that the Schiarrillo appellees were performing and acting in their role in the traditional functions of attorneys at all pertinent times in this action. Traditional function of attorney would be advising their client, but why isn't it the case here that they're stepping outside that role and seeming to interrupt the proceedings to instruct that people put their masks on and going and speaking with particular people to encourage them to do just that, conferring with the police outside of the proceedings about the potential need for arrest, and then signaling the police to come and effectuate an arrest? Are those really traditional roles of counsel? Yes, Your Honor. In the context of this case, they were traditional roles of counsel. At the outset, the amended complaint in this case indicates that the Schiarrillo appellees advised the Board of Education to arrest the plaintiff in this case. Repeatedly throughout the amended complaint, the plaintiff and the appellant repeatedly referred to the Schiarrillo appellees as attorneys for the Board of Education, referred to advice that they were giving to the Board of Education, and called the advice that they alleged the Schiarrillo appellees were providing to the Board of Education bad advice, essentially. I believe that the words that they used in the amended complaint are improper advice that they provided. In terms of the other actions that are alleged in the complaint, the Schiarrillo appellees were doing no more than speaking on behalf of their clients. For example, the plaintiff's appellant in this case alleges that Mr. Schiarrillo told the police officers before the meeting that he sought to have the plaintiff arrested if she was not wearing a mask. In other words, he was voicing the position of his client there. That is in no way different than me standing here today on behalf of my clients and asking you, your honors, to affirm the district court decision. He was simply indicating, not telling them to do it, but that that's what he sought to have the police officers do. The fact that this was the position of his client that he was vocalizing can be found repeatedly by reference back to the amended complaint. For example, in the allegations referring to Jennifer Osborne and her interruption of the meeting, there's a reference to an immediate consultation between her and Ruben, whom plaintiffs allege is her client. There is then a discussion about Ms. Osborne and the Board of Education meeting in executive session. In other words, other reference to her having this discussion with the client. Additionally, there's reference throughout the complaint to an email that was sent that is attached as an exhibit to the complaint. And in that email, there is reference to the fact that there is meetings, that public participation in board meetings provides for the requesting of assistance from law enforcement officers in the removal of a disorderly person when that person prevents or disrupts the meeting with an act that obstructs or interferes with a meeting. The email goes on to state, we ask that community members not place the board in a position where law enforcement has to be called to assist. The positions that are taken by Mr. Schiarillo in terms of the allegations concerning his discussions with the police officers beforehand or even this reference to a signal that he provides to the police officers is no more than him speaking on behalf of clients the same way that attorneys do on behalf of clients in court. Here today, interestingly, despite the fact that littered throughout this amended complaint, there is reference to the fact that the Schiarillo appellees were attorneys. Plaintiff's appellant seems to be arguing that they were acting beyond their role as attorneys here and that that somehow cloaks them in some sort of state authority. They don't answer the question then of if they're not acting as counsel for the board, why they are there, for what other reason they could be there, or from where that state authority may derive. But nonetheless, that argument undercuts their argument that the Schiarillo appellees are state actors. And the dire case cited in our brief, which is one that is admittedly from outside of this circuit and was recently affirmed by the circuit from which it derives, indicates that in a situation in which somebody is arguing that attorneys are acting ultra vires, that that then only discredits and undercuts the argument that they are acting as state actors. So, your honors, in addition to the reasons that my co-counsel have argued here today and set forth in the briefing, we argue and request that the court affirm the district court. I understand the argument. Thank you. Thank you, your honors. I only have six minutes to talk about this case, and I'd ask for a little bit of indulgence in light of all the arguments made. Counsel, I think we've gone a long morning, including allocating significant time to this case. So, I'd ask you not to go much beyond those six minutes. All right. Let's start with, I'll do my best, your honor, and I appreciate the issue. An attorney can speak on behalf of clients all the attorney wants. In this particular case, the attorney was with the superintendent and spoke to the police and asserted that there should be an arrest if she doesn't wear a mask. That's beyond the scope of the attorney's work. Well, but isn't the point they're just communicating on behalf of their client? Well, it is until they're not. Then he came and he spoke to Gwyneth and Mary Nolan, and that wasn't his function to insist that she wear a mask. That's not a function of an attorney. See, if I was an attorney in that situation, I'd tell my client, look, you should have A, have the police tell her to put on a mask perhaps, but I'm not going to interject myself and become the strong arm. That's not my job. I'm an officer of the court. I'm not an officer of the law. I want to talk about the arresting officer. Well, they're in the role of the spokesperson for their client, and so if the client wants to have something communicated, including to the public, why is it outside an attorney's role to do that communication? It's not a communication to the public. It's a communication to one person demanding that she wear a mask. That person who's demanding had already been sued, so he knew that he was a defendant in a case where the entire First Amendment argument was laid out. So he was conflicted. The client is directing him to tell this to certain people. Now, maybe you wouldn't do it as an attorney. Maybe you wouldn't get hired for the job, but there are many attorneys when they are hired and have that included among their duties, if that is part of their representation, then they'll do it. I respectfully suggest that anybody who has a client who says your job is to have somebody arrested, I respectfully suggest that that attorney is not doing his duty. That attorney is doing something beyond his duty. With respect to the arresting officer, the arresting officer never told Ms. Marie Nolan that she was trespassing. She said that they don't want you here, and then they said you're arrested for violating a rule of the building. She three times admitted and acknowledged that this was a First Amendment protest because she was specifically told that by Mr. Scarillo and the superintendent prior to any of this happening. What's the relevance of the opinion of any particular officer or other person as to whether probable cause exists? Well, the arresting officer understands that it's a protest that's happening, and she didn't articulate a reason for the arrest until after the handcuffs went on. She said, I'm going to arrest you for defying trespass. She said, you're violating the rule of the building. They don't want you here. They don't want you here. Well, I'm expressing a First Amendment argument. She goes, I agree, you're expressing a First Amendment argument. You're expressing a constitutional claim. I get that, but they don't want you here. That's not probable cause, and the idea that the arresting officer told Ms. Marie Nolan that she was trespassing is not true. It's flat out not true. It's not in the complaint. With respect to – I'm glad Your Honor brought up Lozman because I wanted to touch on it. The more I think about this case, the more I see this case as Lozman. It is – we look at paragraph, first of all, 31 and 32 of the complaint, which is A41. We argue that these – the letter that went out to parents and the Facebook post were specifically directed toward Ms. Marie Nolan. Everyone understood that to be the case. She's the one who didn't wear the mask. They talked about her, and they were aiming this at her. They intended to retaliate against her. They made clear that they were going to take action against her if she continued the protest. That's why she filed the complaint. She filed the complaint originally to stop them from taking action against her and for interfering with her rights, her First Amendment rights. She's not named in any of those postings, right? She's not specifically named, but it's alleged that it was open and obvious. She got phone calls from people, hey, it's obviously aimed at you, and that's why she filed the complaint in the order to show cause. And they were served with that. They all had it in hand. They all met in private session. We don't know what the session was because we haven't had discovery, but I guarantee they talked about the complaint. I guarantee they talked about her protest, and I guarantee they talked about arresting her. That's Lozman right there. So it's retaliatory on its face, and it's in the Lozman case. With respect to virtual attendance, virtual attendance can't speak at the meeting. It can't even be seen. So there's no protest that matters in virtual attendance. In terms of injunctive relief, we do concede with respect to Mr. Falcone, not necessarily with Ms. Marie Nolan, because there's one aspect of injunctive relief which we do believe to be entirely appropriate still. We've alleged that the school board has retaliated against Ms. Marie Nolan through her children, who are members of the Cranford School District, that they were wearing masks and that they were retaliated against because they weren't the right masks. And Ms. Marie Nolan filed an HIV complaint, and this is all prior to the arrest. It's all part of the complaint. And we sought injunctive relief because our position was that they were retaliating against her through her children, and we sought an injunction to prevent her children from being the subject of retaliation for her conduct. And with that specific injunctive relief, I think it's still an appropriate form of relief to seek in this case. What sort of retaliation would there be given that there's no mask requirement in force at this time? There could be any sort of retaliation. I don't know. What is the injunctive relief that a court could now provide? The injunctive relief, I guess at this point it's not specific. That's true. At the time, certainly, it made sense. At this point, I have to agree that it's not specific. But certainly at the time that this was pending, the issue still existed, and the kids were still mask issues. And if there is talk about reimposing a mask mandate, and if that does happen, I still think injunctive relief may be appropriate. So I would ask the court not to throw that particular piece out. If the court's going to remand, let us see how that plays out. We're at time. I'd like to give you a moment to wrap up. Okay. Well, thank you once again. I believe in both of these cases, Ms. Maureen Olin's case is Lossman. There was an intent to retaliate, and she had a very well-expressed First Amendment protest that would be going on. This matter should be reversed and remanded. We should get some discovery. And with respect to Falcone, again, there was standing. They've conceded standing. It should be remanded. And if the court decides to look at the merits, we also believe that there's merit to his arguments. Thank you. All right. We thank counsel for a very helpful and thorough briefing and arguments, and your willingness to last through a very long morning of arguments and continued stamina. We will take this case under advisement as well, and I wish everyone a good day. Thank you very much. Thank you.